UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALISON HOVANEC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-17-CV-766-XR |
| | § | |
| TRACI MILLER, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**ORDER**

On this date, the Court considered Defendant Traci Miller's Motion to Exclude Expert Opinion Testimony of Joel Sauceda (docket no. 74). After careful consideration, the Court will grant in part and deny in part.

**Background**

Plaintiff Alison Hovanec sues Traci Miller for violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq*., violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, intrusion on seclusion, and intentional infliction of emotional distress.

In her live pleading, the Second Amended Complaint, Plaintiff alleges that she and Miller were friends and had worked together. On May 13, 2016, Hovanec and Miller had a confrontation over the fact that Miller's daughter did not want to spend the night with Hovanec's daughter at Hovanec's house. On May 16, 2016, Hovanec received an email from Carlisle Etcetera, a clothing company for which she worked, in regard to a message they received from

Miller stating that she had never received a refund from Hovanec and/or Carlisle Etcetera for a blouse she had purchased through Hovanec and returned in November 2015.

Later that day, Hovanec received a call from her mother, who was distressed about having received an email purportedly from Hovanec with the email address alisontheloser@gmail.com titled "Your Daughter is Dating a Married Man." Hovanec herself also received an email from alisontheloser@gmail.com "Joel's so Called Divorce." The Joel/"married man" referenced in the emails was Joel Sauceda.

Hovanec contacted Sauceda and asked him if he knew what to do to identify the person sending the emails and stop them. Sauceda owns an internet technology company and began devising a plan to identify the person through capturing their IP address.[1] Because the sender's email address was a gmail account, Sauceda would not be able to obtain the sender's IP address from the email itself, so he wanted to bring the user outside of gmail. Sauceda created a gmail account Roslynjames1954@gmail.com and began communicating by email with alisontheloser@gmail.com. Roslyn James was just a name he made up. Sauceda depo. at 120.

Pretending to be Roslynjames1954, Sauceda wrote "I need info. must talk on private line. he will go down. working for the man." The user at alisontheloser@gmail.com responded, "Working for what man? He is the agent of record for about a dozen different business entities all run out of a small crappy office in San Antonio. His house has been foreclosed on in Summerglen and license revoked involuntarily for Ad Plotter due to unpaid taxes. He lives in an apartment and drives a leased Mercedes. He is a total con artist. If you are a PI you can easily find all this out yourself." Sauceda was "pretty shocked" that he got a response and wanted to get

---

[1] An IP (Internet Protocol) address uniquely identifies a particular network-connected device like a wi-fi router. *United States v. Weast*, 811 F.3d 743 (5th Cir. 2016).

the person curious enough to click on a link to a webpage so he could capture their IP address. Sauceda depo. at 120, 122.

Sauceda owned the domain greenpowur.com and created a webpage on that domain, on which he installed code provided from a web analytics company called statcounter that he knew would capture the IP address of a visitor to the page. Sauceda depo. at 49-51, 66.[2] Sauceda sent another email from roslynjames1954@gmail.com to alisontheloser@gmail.com stating, "he is up to some other crap now have you seen this green power thing he is doing? I do not see a corp registration for this. look at this page he has up. another scam." That email contained a link to the webpage on greenpowur.com that included statcounter code to capture the IP addresses of page visitors.

On the morning of May 17, Sauceda discovered from his statcounter report that the user had clicked on the link, and the statcounter report provided the user's IP address (108.65.34.232) and identified the user as having an AT&T U-Verse account, using a mac operating system (OS X) with a Safari browser, and being located in San Antonio, Texas.  Sauceda's expert report states that the person clicked on the link "where the static[3] IP address of 108.65.34.232 was captured along with identifying information to include a close proximity to Hovanec's house at

---

[2] Internet users "broadcast [their] IP address far and wide in the course of normal internet use." *United States v. Weast*, 811 F.3d 743, 747 & n.13 (5th Cir. 2016) (citing *United States v. Christie*, 624 F.3d 558, 563 (3d Cir. 2010) ("IP addresses are also conveyed to websites that an internet user visits, and administrators of websites . . . can see the IP addresses of visitors to their sites.").

[3] Sauceda has admitted to being confused about the difference between a static and dynamic IP address at the time he wrote his report, and to incorrectly using the term "static IP address" in his report. Sauceda depo. at 71-72.

[address] San Antonio, TX 78216, a MAC operating system along with AT&T Uverse service."
Sauceda report at ¶ 6.[4]

Sauceda asked Hovanec if she knew who it could be. Hovanec had been in Miller's house many times and knew that Miller had AT&T U-Verse and a mac operating system, and thus Hovanec suspected it was Miller behind the alisontheloser@gmail.com emails. Hovanec knew that Miller used a gmail account, so Sauceda determined that he would not be able to capture her IP address from an email. Hovanec and Sauceda devised a plan to email Miller and get her to click on a link to a webpage with the statcounter code to compare Miller's IP address to the one used by alisontheloser@gmail.com. They decided to do so using an email about the Carlisle Etcetera blouse return.

Sauceda set up a different webpage on another domain he owned (shallybrady.com) and Hovanec sent Miller an email to Miller's personal email account tracilmiller@gmail.com about the message from Carlisle Etcetera and the blouse refund. Sauceda created an image of the Carlisle Etcetera email on the shallybrady.com webpage. On May 17, Hovanec emailed tracilmiller@gmail.com a link to the image, writing "I received this from Etcetera yesterday." To see the entire email image, Miller would have to click on the link, which would take her to the shallybrady.com webpage with the statcounter code. The email recipient (presumably Miller) clicked on the image, and the statcounter report showed the IP address 108.65.34.232, with the user having a Mac operating system (OS X) with a Safari browser, and an AT&T U-Verse

---

[4] However, the "exhibit D" within the report shows only a location of "San Antonio, Texas" and does not otherwise indicate a location near Hovanec's home. In addition, during his deposition, Sauceda testified only that statcounter "will identify things like this person lives in the San Antonio area." Sauceda depo. at 82. Thus, there is no supporting evidence before the Court that statcounter identified the user as being in close proximity to Hovanec's house.

account.[5] This was the same IP address and information as the alisontheloser@gmail.com visitor. Thus, Sauceda states in his expert report, "the culprit behind alistontheloser@gmail.com . . . and tracilmiller.com have IDENTICAL IP addresses." Sauceda report at 10.

Later on May 17, Sauceda sent another email as roslynjames1954@gmail.com to alisontheloser@gmail.com, and received a delivery failure notification from Gmail that the account did not exist. Sauceda report Ex. H. Discovery from Google reveals that the alisontheloser@gmail.com email was deleted on May 17. Hovanec suspects that Miller deleted the email account after receiving an email from Hovanec's lawyer, which was emailed to Miller on May 17 and included a preservation notice. Hovanec Aff. (docket 77-1) at 23.

Hovanec designated Joel Sauceda as an expert witness in this case. He produced a written report and was deposed. Sauceda's summary in his report states,

> The forensic investigation revealed the static IP address of Alison Hovanec alisontheloser@gmail.com 108.65.34.232 is the same static IP address of Traci Miller tracilmiller@gmail.com 108.65.34.232. Traci Miller is Alison Hovanec alisontheloswer@gmail.com and has access to both of these accounts from the same physical location.

> It is also my opinion that Traci Miller changed her static IP address and visited the Shally Brady site again on May 26, 2016 as an IP address of 108.65.34.102 was captured which would signify Miller made an effort to change her IP prior to her responding to the initial response to Hovanec's attorney trapping letter to include a violation of spoliation of evidence that was included in that letter.

Sauceda Report at 4. Miller challenges each of these opinions.

---

[5] Sauceda's report states that the user clicked on the email link twelve times on May 17 from 12:06 p.m. to 3:33 p.m. This assertion is not entirely supported by the documentation on file, which includes an excel spreadsheet that does show twelve visits from the IP address but does not include dates or times. Docket no. 74-6.

**Applicable Standard**

Rule 702 of the Federal Rules of Evidence provides for the admissibility of expert testimony if it will "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. Additionally, the testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods" that the expert has "reliably applied" to the facts of the case at hand. *Id.*

The Court must first determine whether the proffered witness qualifies as an expert. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702). Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact, rather than for the court. *Rushing v. Kansas City S. Ry. Co*., 185 F.3d 496, 507 (5th Cir. 1999).

If the expert is qualified, then the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) provides the analytical framework for determining the admissibility of expert testimony. Daubert requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Id.* at 589. This role requires "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id*. at 597; *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 244 (5th Cir. 2002) ("In short, expert testimony is admissible only if it is both relevant and reliable."). Although Federal Rule of Evidence 704 provides that otherwise admissible opinion is not objectionable just because it embraces an ultimate issue to be decided by the trier of fact, that does not mean that the door is open to all

opinions, and the rule is not intended to allow expert witnesses to give legal conclusions or tell the jury what result to reach. *Owen v. Kerr-McGee Corp*., 698 F.2d 236, 239-40 (5th Cir. 1983). An expert should not be permitted to give opinions that simply reiterate what the lawyers can and do offer in argument. *Little v. Technical Specialty Prods., LLC*, 940 F. Supp. 2d 460, 468 (E.D. Tex. 2013) (citing *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)). The ultimate focus remains on whether the testimony would be helpful to the trier of fact and is reliable.

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court enumerated five nonexclusive factors to consider when assessing whether the methodology upon which an expert rests his opinion is reliable: (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id*. at 593-94; *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138 (1999). The point of this inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152.

## Analysis

Miller's motion focuses on three aspects of Sauceda's testimony: (1) that his forensic examination revealed that the IP address of "Alison Hovanec" alisontheloser@gmail.com is the same IP address of Traci Miller tracilmiller@gamil.com; (2) that Traci Miller is "Alison Hovanec" alisontheloser@gmail.com and has access to both of these email accounts from the same location; and (3) Miller changed her IP address and visited the Shally Brady website again on May 26, 2016 as the IP address was captured, which would signify Miller made an effort to change her IP address prior to her responding to Hovanec's attorney's trapping letter.

Miller moves to exclude Sauceda's opinion testimony on the ground that Sauceda is not qualified because he is not formally trained as a technology expert and does not otherwise possess the skill, knowledge, experience, training, or education to qualify him as an expert. Specifically, Miller notes that Sauceda does not possess a single academic degree or certification, or any "established credentials in the discipline of digital forensic investigation" and offers no source material as the foundation for his alleged expertise. Sauceda cites nineteen years of experience in internet marketing and technology development and consulting and asserts that he is well-versed in identifying IP addresses in email communications.

**opinion #1: Sauceda's "forensic examination" revealed that the static IP address of "Alison Hovanec" alisontheloser@gmail.com is the same static IP address of Traci Miller tracilmiller@gamil.com**

Miller's challenge to this testimony is generally that Sauceda is not qualified to perform "digital forensic investigation." Miller further points out that Sauceda was unfamiliar with basic industry terminology such as static IP address, dynamic IP address, and native digital format of

data when he prepared his report, and Sauceda admitted as his deposition that his incorrect use of static, dynamic, and native resulted in issues with Defendant's expert's report. Thus, Miller contends that Sauceda's testimony is not helpful to the jury and instead has muddied the waters.

Sauceda has established sufficient experience in registering domain names, establishing webpages, and using web analytics tools such as statcounter to capture IP addresses from webpage visitors. Sauceda testified that statcounter is an analytics service to which he has a paid subscription. Sauceda depo. at 49-50. He testified that he uses it to obtain the basics about webpage visitors, "like the IP address of the visitor, length of time [on the site], the operating system that they viewed the website on . . . that nature." *Id.* at 51. He testified that he can log into his statcounter account, and the information is there, and the data can also be downloaded into Excel/.csv format. Sauceda depo. at 51-52, 68-69.[6]

Sauceda may testify about creating the roslynjames1954@gmail.com account, creating the webpages and images at greenpowur.com and shallybrady.com, installing the statcounter code on those pages (and information about the statcounter subscription in general as he has used it), sending the emails with webpage links, and what was shown on the statcounter reports. He may also testify that, based on his actions and the information received, the IP address of the person who clicked on the link in the email sent to "Alison Hovanec" alisontheloser@gmail.com is the same IP address of Traci Miller tracilmiller@gamil.com. This testimony is a combination of fact and expert testimony, and Sauceda has sufficiently established that he has the necessary technical expertise and that his method for obtaining the IP addresses was reliable.

---

[6] During Sauceda's deposition, Miller's expert McWhorter logged onto Sauceda's statcounter account and viewed the data, and Miller has not indicated that anything reported to be shown in the statcounter reports by Sauceda is incorrect or inaccurate.

Miller further challenges Sauceda's testimony as not being based on sufficient facts or a reliable methodology. Miller asserts that "[a]s is made clear on the face of his report and by his own admissions in his deposition, Sauceda's theory has not been tested, it has not been subject to peer review, no standards or controls were used, and the theory has not been generally accepted in the scientific community." Docket no. 74 at 8-9. This argument turns on how one characterizes Sauceda's methodology and opinion. Miller's counsel accurately characterized Sauceda's methodology as one identifying that the "same IP address was used to . . . click on web pages from a person using the email address alisontheloser@gmail.com and tracilmiller@gmail.com." Sauceda depo. at 115.

Plaintiff asserts that another expert, Scott Broderhausen, verified Sauceda's methodology for capturing the IP addresses for the user of alisontheloser@gmail.com and tracilmiller@gmail.com and that they came from the same IP address. Broderhausen is an expert in computer forensics (Miller has not challenged his expertise) and a private investigator, and he owns a computer forensics company. Docket no. 76-2. Broderhausen's report states he was hired "to examine the methodology used to extract [an] IP address of an individual suspected of harassment." Docket no. 76-2. He reviewed documents provided to him by Sauceda documenting his method for capturing the IP addresses using the emails, webpages, and statcounter. Docket no. 76-2; Sauceda depo. at 35-36.

Broderhausen's summary states, "Since the IP address for alisontheloser@gmail.com and tracilmiller@gmail.com came from the same location of 108.65.34.232, the person who had access to both those emails used the same ATT Uverse modem. This IP address was traced back to San Antonio, Texas. In order for these IP addresses to be the same, it must be from the same

physical location and have access to both alisontheloser@gmail.com and tracilmiller@gmail.com." Docket no. 76-2.

Broderhausen confirms that Sauceda's methodology for capturing the IP address and other information from the webpage views is reliable. Although Broderhausen testified that he had never heard of "statcounter" itself and had never used the tool, he was familiar with web analytics tools used to capture IP addresses. Broderhausen depo. at 28-30. He also stated it was "standard IT stuff" and although he had not used statcounter, he looks at IP addresses all day, every day. *Id.* at 32-33. He testified that there is a lot of software that will tell you where an IP address is located. *Id.* at 33. He did not review the actual statcounter program, only the screenshots provided by Sauceda, but it looked like a typical, normal report that he would see when gathering information. *Id.* at 31, 38-40. He concluded after his review that Sauceda's method was a valid way to determine if the two hits on the websites were from the same IP address. *Id.* at 33-34. He agreed that it would be important to know the difference between a dynamic and static IP address to do a forensic computer investigation. *Id.* at 42-43. But he also testified that Sauceda would not have been able to do what he did without some technical knowledge. *Id.* at 44. Thus, Broderhausen generally confirms that Sauceda's methodology for capturing IP addresses and other analytics information from Traci Miller and the user behind alisontheloser@gmail.com to determine whether they were the same is valid.

In addition, in response to a subpoena asking it to provide subscriber information for the name and address linked to the 108.65.34.232 IP address from January 1 to June 30, 2016, AT&T provided Traci Miller's name and address. Docket no. 76-4. Thus, AT&T verified that the IP address assigned to Traci Miller's U-Verse account at the time was 108.65.34.232.  Miller testified at her deposition that she used a Macbook, an iPad, and an iPhone, thus also generally

confirming the use of a Mac operating system. Thus, this is some verification that the statcounter software collected accurate information from the webpage visit caused by Miller's clicking on the link to the shallybrady.com webpage in the email sent to Miller's gmail address by Hovanec.

Last, Miller's expert Russell McWhorter agreed both that (1) if you have a website, you can determine the IP address of visitors to that website; and (2) the IP address of 108.65.34.232 is associated with outbound e-mail traffic from tracilmiller@gmail.com. McWhorter depo. at 57-58 (docket no. 76-3). Thus, there appears to be no real dispute that Traci Miller's IP address was 108.65.34.232 on May 17, 2016 and that when she clicked on the shallybrady.com webpage in response to Hovanec's email, the statcounter tool accurately captured that IP address. And Miller has not challenged the accuracy of Sauceda's testimony that the statcounter tool also captured the same IP address and Mac OS X operating system on the greenpowur.com webpage visit by the user of alisontheloser@gmail.com in response to the roslynjames email. Thus, Sauceda has shown a reliable method for capturing the IP addresses and has shown that the IP addresses were the same. He will be permitted to testify to this effect.[7]

**opinion #2: Traci Miller is "Alison Hovanec" alisontheloser@gmail.com and has access to both email accounts from the same physical location**

Miller challenges whether Sauceda can opine from the information and from his experience that Traci Miller was the person using the alisontheloser@gmail.com. Of course, the fact that two emails are sent from or two webpage views come from the same IP address does not automatically establish that the same person did both acts. In this case, the IP address captured was that assigned to Miller's modem, and thus would show as the public IP address for any

---

[7] In addition, most of his testimony is simply reporting facts rather than utilizing methodology or rendering opinions.

device using Miller's ATT U-Verse wi-fi network. Miller argues that Sauceda is unqualified to render his opinion and that there is an analytical gap between the available data/information and the conclusion that Miller was the person behind alisontheloser@gmail.com.

Miller argues that Sauceda lacks training and expertise to determine whether a particular person was sending an email, noting that he confused static and dynamic email addresses and did not know what a Globally Unique Identifier ("GUID") is or the significance of the fact that the statcounter showed different GUIDs for the greenpower.com webpage view and the shallybrady.com webpage view. Sauceda acknowledged that he did not know what a GUID was or the significance of two different GUIDs. [8] Sauceda depo. at 86, 116. But he asserted that he did identify the IP address from whomever was behind the email address, and it was the same as

---

[8] Miller does not explain the significance of the GUID, how it is assigned, or what different GUIDs mean on the statcounter report. Although not clear from the briefing on the motion to exclude, Miller is apparently asserting that the fact that there were two different GUIDs shown on the statcounter report means that the user of alisontheloser@gmail and Traci Miller accessed the websites on two different devices. Miller contends that her counsel and expert were not aware of and were unable to explore this issue until they discovered it at Sauceda's deposition on December 5, 2018, when Sauceda gave access to his statcounter account to Miller's expert and provided the statcounter data printouts (Miller asserts she had not previously had access to the information in native format). Plaintiff contends that this information was not newly revealed in Sauceda's deposition, but was produced in discovery in the form of a series of emails between Sauceda, retained expert David Gallant, and prior counsel Adam Cortez on July 7, 2018. Docket no. 82 Ex. N. Plaintiff asserts this production included the statcounter data printouts with the GUIDs and a discussion with Gallant, a computer expert, referencing the fact that there were GUIDs in the data. These pages appear to be located at HOV101 to HOV117 in a production of HOV001 to HOV166. Thus, it does not appear that Miller was first able to ascertain the different GUIDs at Sauceda's deposition.

In response to Miller's separately filed motion for summary judgment, Hovanec has provided an Affidavit from her other expert Broderhausen, who states that the GUID was "mostly likely used by the analytics software to keep track of website visitor session[s]" and were not permanently assigned to an electronic device, such as a computer, iPad, or iPhone. Thus, he states that the fact that the "two contacts from devices registered in the statcounter referenced in this case shows two different GUID numbers does not necessarily mean they came from different devices." Docket no. 77 Ex. C. In her summary judgment reply, Miller objects to Broderhausen's Affidavit because it "contains completely new opinions," was not included in the scope of his analysis previously, and is devoid of any basis of opinion." Docket no. 80 at 4 ¶5. In her sur-reply, Hovanec asserts that "without any expert testimony or supporting evidence, [Miller] has thrown out a claim that a GUID number is significant and Sauceda can be impeached because he did not demonstrate expertise regarding GUID numbers in his deposition" and "Plaintiff has chosen to respond to that baseless claim by offering testimony from Mr. Broderhausen." Docket no. 82. Sauceda will not be permitted to testify about GUIDs, given his admission that he is unfamiliar with them.

Traci Miller's and both users had a device with the same operating system (OS X). [9] Sauceda

depo. at 85, 108, 116. Further, he stated that from the available information and the timing of the

various emails and clicks, it is his opinion that Miller was the user of alistontheloser@gmail.com

and that he would "bet his life on it that it's the same person." Sauceda depo. at 71, 116.[10]

Miller also argues that Sauceda cannot conclude from the available information that

Miller was the user of the alistontheloser@gmail.com email account who clicked on the

greenpowur.com link because (1) Hovanec herself and others (such as Hovanec's ex-husband)

could have had access to Miller's home wi-fi network (including from outside the home), (2)

multiple devices and users may be using the same home wi-fi network, (3) an IP address alone

does not allow one to specifically identify the user of the wi-fi network; (4) the devices used by

tracilmiller@gmail.com and alistontheloser@gmail.com had different GUIDs; (5) and Miller

would not necessarily have known certain of the information in the email from

alistontheloser@gmail.com to roslynjames1954@gmail.com, including that Sauceda lived in an

apartment and drove a leased Mercedes.

Sauceda agrees that he cannot definitively say who had control over the

alistontheloser@gmail.com email. Sauceda depo. at 101-102. Sauceda's methodology for

identifying Miller as the user of the alistontheloser@gmail.com essentially entails capturing the

---

[9] Sauceda testified that they also had the same screen resolution, but the underlying reports do not show this. However, Miller's expert McWhorter was given access to the statcounter program online and was able to view whatever information was reported. The Court only has the excel spreadsheets, which appear to lack some of the information and have also been edited somewhat with comments. Sauceda will be permitted to testify about what information the statcounter report showed that was verifiable by Defendant's expert McWhorter by logging into the account.

[10] Sauceda testified that his conclusion was not dependent on Hovanec's assertion that Miller also accessed Hovanec's iCloud account to validate the alistontheloser@gmail.com account and that he did not factor that into his analysis. Sauceda depo. at 113-114. Although he later opined that Miller "probably did" compromise Hovanec's iCloud account, he did not include this information in his report and has not identified any expertise in that area, and thus he may not testify about this issue.

IP address, ISP, OS, and browser information of the user (and potentially other information in the statcounter program) and then using external information, such as the timing of views and comparisons to information known about Traci Miller (such as her IP address, ISP, OS, and browser information), to conclude that Miller is the likely user. That is not expertise in identifying an email user, but simply comparing information and using logic. Thus, Sauceda will not be permitted to provide an expert opinion that Miller is Alison Hovanec alisontheloser@gmail.com or had access to the account.

While the information available to Sauceda is some evidence that Miller was the person who sent the alisontheloser@gmail.com, it is not conclusive, nor does Sauceda have the expertise to provide expert opinion testimony that it was Miller. Sauceda has no direct proof that Miller had access to the alisontheloser@gmail.com email address. He has evidence only that the person using the alisontheloser@gmail.com clicked on the link he sent while logged into Miller's home wi-fi, and thus the person, like Miller, has access to Miller's wi-fi network. But Sauceda has not shown that Miller was the only person with access to her home wi-fi network. Both he and Broderhausen acknowledged that anyone with the wi-fi name (SSID) and password (if secured by password) could access the wi-fi network. Thus, it is possible that the user behind alisontheloser@gmail.com was another person inside Miller's home or outside her home but close enough to access the wi-fi network.[11] Because Sauceda's inferences from the available data are not based on expertise and can be argued by the attorneys as a basis for concluding that Miller was behind the alisontheloser@gmail.com account, Sauceda may not offer expert opinion testimony that Miller was alisontheloser@gmail.com.

---

[11] Identifying an IP address only narrows down the field of possible users; it does not identify the ISP subscriber as the person using the IP address. *See Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160 (D.D.C. 2018) (noting that virtual private networks and onion routing spoof IP addresses; routers and other devices are unsecured; malware cracks passwords and opens backdoors; and multiple people (family, roommates, guests, neighbors, etc.) share the same IP address).

**opinion #3: Miller changed her static IP address and visited the Shally Brady site again on May 26, 2016 . . . which would signify Miller made an effort to changer her IP prior to responding to the initial trapping letter**

Regarding Sauceda's opinion that Traci Miller did something to intentionally change her IP address based on a visit to the Shally Brady website by the IP address 108.65.32.102 on May 26, 2016 recorded by statcounter, Sauceda will not be allowed to testify to this effect. Sauceda may testify that he received another webpage visit to the Shally Brady webpage on May 26 and what the IP address was, but not that he believes it to be Miller or that Miller intentionally changed her IP address. Given that he confused the concepts of static and dynamic IP addresses and his information about how IP addresses may be changed does not appear to be based on experience, education, or training, he has no demonstrated basis for testifying to this conclusion.

## Conclusion

Miller's Motion to Exclude Expert Opinion of Joel Sauceda (docket no. 74) is GRANTED IN PART and DENIED IN PART as discussed herein.

Sauceda may testify that he created the greenpowur.com webpage and installed statcounter code, that he created the roslynjames1954@gmail.com email address, that he emailed alisontheloser@gmail.com, that he included a link to his webpage at greenpowur.com that included the statcounter code, that someone visited the webpage and what information (IP address, OS, etc.) was captured and displayed in his statcounter report from the visit.

Sauceda may also testify that he created the shallybrady.com webpage and installed the statcounter code on that page, and that the link was then contained in the email sent from Hovanec to Miller, and that in response to the email someone (presumably Miller, who testified

at deposition that she is the only user of the tracilmiller@gmail.com email in which the link was placed) clicked on the link and viewed the webpage. Sauceda may testify about what was reported on the statcounter tool for the shallybrady.com webpage.[12]

He may not offer an expert opinion that Miller was Alison Hovanec alisontheloser@gmail.com or that she had access to that email account or otherwise sent the emails. He also may not testify about Miller's access to Hovanec's iCloud account. Nor may he offer an expert opinion that Miller intentionally changed her IP address after the attorney's first trapping letter.

It is so ORDERED.

SIGNED this 2nd day of July, 2019.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[12] He may not testify about the accuracy of any geo-location capabilities of the statcounter tool, as he testified that he had been unfamiliar with this aspect of the statcounter code until he viewed the report on May 17. Sauceda depo. at 123 ("I didn't have any idea about geo-location or anything until this link was clicked on. And I didn't see that had happened until the – the morning, the next morning."). He also testified that the geolocation information did not factor as heavily into his conclusion as the other information, such as the IP address and the timing of clicks. *Id.* at 71.