UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALISON HOVANEC, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL NO. SA-17-CV-766-XR |
| TRACI MILLER, | § § § | |
| Defendant. | § | |

## ORDER

Plaintiff brings this suit alleging that Traci Miller, her former friend, violated the Stored Communications Act, 18 U.S.C. § 2701, *et. seq.*, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et. seq.*, and also asserts state law causes of action for invasion of privacy ("intrusion on seclusion") and intentional infliction of emotional distress. Plaintiff's claims against her estranged husband, Moises Luevano, were dismissed because they were required to be submitted to arbitration. See Dkt. No. 22.

**Background**

On or about May 15, 2015, Plaintiff's divorce case with Moises Luevano was partially resolved with a mediated settlement agreement. A final decree of divorce has not been entered because Plaintiff believes there was fraud in the inducement of that agreement. Days later her independent contractor position with W by Worth was terminated.

On May 16, 2016, Plaintiff alleges that her mother received an email from [alisontheloser@gmail.com](mailto:alisontheloser@gmail.com) titled "Your Daughter is Dating a Married Man." On that same date she also claims that she received an email from the same address, with the subject: "Joel's so Called Divorce."

1

In response to receiving this email, Plaintiff alleges that she contacted her boyfriend, Joel Sauceda, for advice as to how to identify the sender of these emails. According to Plaintiff, Mr. Sauceda is the "owner of an Internet Technology Company."

In an attempt to obtain the email address of the sender, Plaintiff alleges Sauceda created a Gmail account, Roslynjames1954@gmail.com and set up a stat counter and IP identifier at statcounter.com. He thereafter sent an email to alisontheloser@gmail.com with a link to www.greenpowur.com. The user of alisontheloser@gmail.com clicked on the link and the static IP address was captured and identified as 108.XX.XX.232. Plaintiff alleges that Sauceda informed her that this was an AT&T account with a Mac operating system located near Plaintiff's home. Sauceda then sent an email to Defendant Miller and determined that her IP address was 108.XX.XX.232.

On May 17, 2016, Plaintiff contacted an attorney, and this attorney, Richard Crow, emailed a letter to Miller demanding the following:

> By this letter, Mrs Traci Miller is hereby given notice not to destroy, conceal or alter any paper or electronic files, personal email other data generated by and/or stored on your computer systems and storage media (e.g., hard disks, floppy disks, backup tapes), or any other electronic data, such as voicemail, gmail accounts. This includes, but is not limited to: email and other electronic communications; word processing documents; spreadsheets; databases; calendars; telephone logs; contact manager information; Internet usage files; offline storage or information stored on removable media; information contained on laptops or other portable devices; telephones and network access information.
>
> Through discovery we expect to obtain from Mr. & Mrs. Traci Miller a number of documents and other data, including files stored on computers and storage media as well as smart-phones and personal emails In particular, we will seek information related to fictitious emails created under the name Alison Hovanec (Aiisontheloser@gmail.com) on ip address 108.XX.XX.232 Att

2

Uverse. We will seek relevant documents and other data from the
time period of September, 2015 through May 29, 2016.

On May 18, 2016, Plaintiff alleges that all her emails stored in her AOL account had been deleted, and that despite changing passwords and security questions, she no longer was able to log into her account. When speaking with an AOL representative, she became aware that her email address was a sub account and that the master account established in 2001 belonged to Moises Luevano. Plaintiff now suspects that Luevano was reading her emails (including attorney-client emails) during the divorce proceedings. Plaintiff also alleges that the AOL master account (PuppyTrip1) modified Plaintiff's AOL subaccount on May 18, 2016.

On May 23, attorney Crow sent another letter to Miller demanding:

> By this letter, you Ms. Traci Miller are hereby given notice you are advised not to destroy, conceal or alter any paper or electronic files, other data generated by and/or stored on your computer systems and storage media (e.g., hard disks, floppy disks, backup tapes), or any other electronic data, such as voicemail. This includes, but is not limited to: email and other electronic communications; word processing documents; spreadsheets; databases; calendars; telephone logs; contact manager information; Internet usage files; offline storage or information stored on removable media; information contained on laptops or other portable devices; telephones and network access information between November 2013 to though all of 2016.

Plaintiff alleges that Miller altered Miller's IP address on or about May 26, 2016. Plaintiff alleges that Miller's new IP address is 108.XX.XX.102.

Plaintiff further alleges that on October 13, 2016, she discovered that Miller accessed her iCloud account and the [alisontheloser@gmail.com](alisontheloser@gmail.com) was created on May 16, 2016. Plaintiff further alleges that Miller deleted that email address on May 17, 2016, after receiving attorney Crow's communication.

**Defendant's motion for summary judgment**

Defendant seeks summary judgment arguing that Plaintiff failed to make the requisite initial disclosures under Fed. R. Civ. P. 26(a)(1) with regard to her damages and impermissibly refused to answer questions during her deposition regarding her damages (invoking attorney-client privilege). Accordingly, Miller argues that Plaintiff's claims fail for lack of damages.

Plaintiff's response (doc. no. 106) fails to address the lack of damages claims, and merely reiterates Hovanec's position that she believes Miller was engaged in "cyberstalking" by allegedly sending one email to her mother, allegedly talking with her father on one occasion about Plaintiff's health, and quitting her independent contractor arrangement with W by Worth, which allegedly made Plaintiff look bad with management.

**Analysis**

**A. The Computer Fraud and Abuse Act**

"The CFAA criminalizes, inter alia, 'intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] ... information from any protected computer,' 18 U.S.C. § 1030(a)(2)(C), and 'intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss,' *id*. § 1030(a)(5)(C)." *Sewell v. Bernardin*, 795 F.3d 337, 339–40 (2d Cir. 2015). "The statute also provides a civil cause of action to '[a]ny person who suffers damage or loss by reason of a violation of this section.' Id. § 1030(g)." *Id*. Under the CFAA "the term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior

to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C.A. § 1030.

In this case the Plaintiff alleges that she lost her AOL account and expended some effort at restoring her emails. The briefing in this case is very unhelpful and so was Plaintiff's deposition testimony. She testified that she spent 580 hours of her personal time "investigating" this case. She seeks $25 per hour as compensation. She testified that she had a "log" that tracked the time spent, but she refused to produce it in discovery. Plaintiff's claim for $14,500 in lost personal time is denied because of her abuse of the discovery process.[1] More problematic is the fact that Plaintiff testified that she has no evidence beyond her subjective belief that Miller accessed her AOL account.[2]

Plaintiff also claims that on October 13, 2016, she unsuccessfully attempted to access her iCloud account, and contacted Apple for assistance to reset her account password. Plaintiff alleges in her second amended complaint that upon resetting her account she became aware that on May 16, 2016, Miller "linked Alison HOVANEC's iCloud account aliluevano@me.com to Alison Hovanec alisontheIoser@gmail.com." Plaintiff further alleges that the following day, May 17, 2016, Miller deleted the alisontheloser email address.

Plaintiff further alleges in her amended complaint that Miller "violated the CFAA when she obtained HOVANEC'S iCloud password then accessed her iCloud information where all of HOVANEC'S personal information emails, text messages, contacts, photographs, financial and personal health information was stored."

---

[1] Plaintiff repeatedly failed to answer legitimate questions regarding her damages throughout her deposition. *See e.g.*, Plaintiff's Depo. at pp. 129-130.
[2] Plaintiff's Depo. at pp. 98-101, 124. Plaintiff contends that Mr. Luevano accessed that account. *Id*. at 98.

Plaintiff retained the services of a forensic expert, Scott Broderhausen, who reviewed the work done by Mr. Sauceda. Broderhausen opines: "Since the IP address for the [alisontheloser@gmail.com](alisontheloser@gmail.com) and [tracimiller@gmail.com](tracimiller@gmail.com) came from the same location of 108.65.34.232, the person who had access to both of those emails used the same AT&T U-verse modem."

Plaintiff contends that this creates a material fact issue on the issue of whether a CFAA violation occurred. Miller contends that if her computer was used to create this account, Plaintiff herself did this because she had access to Defendant's home WIFI and used Defendant's home computer on a regular basis.

Regardless of whether improper access to the iCloud occurred, Plaintiff only makes the conclusory statement that any of her private data was actually seen by Miller, and Plaintiff fails to proffer any competent summary judgment evidence that she suffered damages as a result of the alleged intrusion into the iCloud account.

With regard to the creation and immediate deletion of the alisontheloser Gmail account, Plaintiff fails to proffer any competent summary judgment evidence that she suffered damages as a result of the creation and subsequent deletion of that email address, much less the minimum $5,000 of damages required by the statute. To the extent Plaintiff claims she spent hours (at the rate of $25 per hour) investigating and assessing the damage caused by Miller's access, Plaintiff continually failed to differentiate between time spent responding to the alleged CFAA violation with regard to the AOL account and time spent on the iCloud account and to provide adequate proof of loss with regard to the iCloud account. Her summary judgment Affidavit continued to fail to provide details about time spent with regard to the iCloud account. Docket no. 89 at 17 n.11 (citing Affidavit at docket no. 77-1). Although she alleges in her complaint that "[t]he

amount of personal time [she] has had to expend on the violations by Miller is at least 150 hours," that amount of time is not reasonably supported by the summary judgment evidence, given that there is no evidence of loss of any emails or data associated with her iCloud account. And Plaintiff refused to provide any supporting evidence or testimony about such time spent when asked at her deposition. *E.g.*, Depo. at 85-95. Plaintiff's alleged loss of income from the loss of her W by Worth position is too speculative to support recovery. Although Plaintiff could testify at trial about her mental anguish damages, she did not provide medical records or respond to questions about her alleged mental anguish at her deposition. *E.g.*, Depo. at 77-78. The Court finds that Plaintiff's failure to provide damages information in her initial disclosures and her refusal to answer questions about her damages in her deposition was harmful and was not substantially justified, and her abuse of the discovery process precludes her from offering this evidence at trial. FED. R. CIV. P. 37(c)(1).[3] Plaintiff has no evidence to support the required damages for a CFAA violation.

Summary judgment is granted in favor of Miller and against Plaintiff on the CFAA claim.

**B. The Stored Communications Act**

Under the SCA, it is a crime to intentionally access without authorization a facility through which an electronic communication service is provided. 18 U.S.C. § 2701(a). "As with the CFAA, the SCA establishes a civil cause of action. '[A]ny ... person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind' may file suit. Id. § 2707(a)." *Sewell*, 795 F.3d at 339–40. "The court may assess as damages in a civil action under this section the sum of the actual

---

[3] The Court previously discussed in detail the failure to comply with initial disclosure requirements, the failure to substantiate allegations of damages, and the failure to answer questions at the deposition in docket no. 89 and incorporates that discussion herein.

damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages." 18 U.S.C.A. § 2707.

Plaintiff testified that she has no evidence beyond her subjective belief that Miller accessed her AOL accounts. To the extent that Plaintiff relies upon Joel Sauceda or Scott Broderhausen to opine that Miller's IP address was used to access Plaintiff's iCloud account, Plaintiff failed to proffer competent summary judgment evidence that she suffered losses. Plaintiff repeatedly refused to answer any questions on this subject during her deposition testimony.

Although there is a material fact issue as to whether Miller's IP address was used to access Plaintiff's iCloud account and/or her Gmail account, Plaintiff's proof is speculative that Miller accessed and viewed any of Plaintiff's emails themselves, other than accessing the account for creating and deleting the alisontheloser email address.

As with the CFAA claim, Plaintiff's "damages" for time lost "investigating" the claim and her alleged mental anguish are excluded because of her abuse of the discovery process. As for the statutory damages, in the absence of actual damages, statutory damages are not available. *Vista Marketing, LLC v. Burkett*, 812 F.3d 954 (11th Cir. 2016); *Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009). To the extent that attorney's fees could be recoverable, Hovanec stated in her deposition that she is not paying such fees. Depo. at 114-15.

Defendant's motion for summary judgment on this claim is granted.

**C. Intentional infliction of emotional distress claim**

In Texas, "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). "To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).

Although Plaintiff claims to suffer from PTSD, in part, due to Miller's alleged acts, she failed to cooperate in the discovery process by disclosing any of those medical records and refusing to testify about what other acts may be contributing to her PTSD. Because of Plaintiff's failure to cooperate in the discovery process, this claim is dismissed. Further, Plaintiff fails to establish that the alleged acts were "extreme and outrageous." Assuming the facts alleged by Plaintiff to be true,[4] Plaintiff voluntarily disclosed to Miller that she was dating a married man and Miller allegedly repeated this to Defendant's mother. Plaintiff's father asked how Miller thought his daughter was doing, and Miller responded that the two of them needed to address the

---

[4] Miller denies sending an email to Plaintiff's mother. Depo. of Miller at pp. 63, 128.

matter.[5] Miller's elementary school age daughter did not want to have a sleepover at Plaintiff's house is not "bullying", no matter that Plaintiff's daughter was upset by the refusal. There is no competent summary judgment evidence, other than Plaintiff's subjective belief, that Plaintiff lost her independent contractor arrangement with W by Worth.[6] Plaintiff insinuates that when Miller called Etcetera to seek a refund on a blouse, that somehow triggered her loss of work arrangement with W by Worth. Again, subjective belief is not competent summary judgment evidence.[7] There is no competent summary judgment evidence, other than Plaintiff's subjective belief, that Plaintiff's other friends terminated their friendships because of acts taken by Miller. Defendant's motion for summary judgment on this claim is granted.

**D. Invasion of Privacy claim**

To establish an actionable invasion of privacy — intrusion-upon-seclusion — a plaintiff must show (1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person. *Moore v. Bushman*, 559 S.W.3d 645, 649 (Tex. App.–Hou. [1st Dist.] 2018, no pet.). As stated above, Plaintiff has no competent summary judgment evidence that Miller accessed her AOL account. Plaintiff has produced no competent summary judgment evidence that Miller actually viewed any of the contents of her iCloud account. Otherwise, assuming Plaintiff's

---

[5] Miller Depo. at pp. 65-67 (According to Miller, Plaintiff's father asked Miller if she thought his daughter had a drinking problem.). Miller does admit to calling Plaintiff's father on the phone after the incident wherein Plaintiff called their children's school and claimed that Miller's daughter was engaged in bullying because she declined a sleepover invitation. Miller testified that she thought Plaintiff's behavior was worrying. Miller Depo. at pp. 136-137.

[6] Miller's Depo. at pp. 59-60 (Miller denies any conversations with W by Worth about Plaintiff). Confusingly, Plaintiff's counsel also asks questions about a previous employer Etcetera, a place where Plaintiff testified she voluntarily resigned from.

[7] Plaintiff testified at her deposition that she did not remember why she was fired from W by Worth and that she threw away the termination notice. Plaintiff's Depo. At p. 72.

version of events is true, repeating to Plaintiff's mother that Plaintiff was dating a married man was not private. Plaintiff herself voluntarily disclosed this fact to Miller and potentially others.[8]

**Plaintiff's motion for sanctions**

Plaintiff seeks sanctions against Miller pursuant to Fed. R. Civ. P. 37(e) for failing to preserve various electronically stored information. In a rambling diatribe, Plaintiff basically argues she told Miller she had to preserve everything, and she failed to do what Plaintiff's counsel directed her to do. There is no analysis of whether the precatory language of Rule 37(e) has been met, what prejudice Plaintiff has suffered, or if the acts were done intentionally. It appears that Plaintiff is claiming the loss of Defendant's cell phone and server were done intentionally, but Plaintiff offers no evidence to establish the requisite "intent to deprive."

First, Plaintiff complains that Miller failed to preserve a MacBook, but Miller testified that was "trashed" in the Spring of 2016, after her daughter spilled apple juice on it. No further discussion was conducted on this subject. Defendant acknowledges that she did not take any preservation actions following receipt of attorney Crow's letters, but states that she did not do so because she did not do any of the acts that she was accused of and that she called AT&T and was informed that her IP address was not the one listed in attorney Crow's letter.[9] With regard to the router at Miller's home, Miller testified that the router was removed by AT&T when her family moved residences and that AT&T issued her a new router at the new residence.[10]

---

[8] Miller Depo. at pp. 71-72.
[9] Miller Depo. at pp. 145-148.
[10] *Id*. at 164-165.

11

Plaintiff fails to offer any meaningful analysis as to why the cell phones (specially Dr. Miller's phone) and the server are relevant to any of the causes of action which she asserts.[11] Further, Plaintiff fails to assert why she needs any information prior to May 16, 2016. The "preservation demand" letters that attorney Crow sent requested data from 2015 and then later requested data preservation from November 2013.

This case and the request for data seems in large part an effort to undo the mediated settlement agreement that Plaintiff reached with her estranged husband. For some inexplicable reason, Plaintiff has drawn Miller into that dispute. Plaintiff's discovery requests have gone to absurd extremes, such as seeking all communication Miller may have had with various parents whose children attend the Montessori School.

Plaintiff's motion for sanctions is denied.

**Conclusion**

Defendant's motion for summary judgment (docket no. 104) is GRANTED. Plaintiff's motion for sanctions (docket no. 103) is DENIED. The Clerk shall enter a separate Judgment pursuant to Rule 58 that Plaintiff shall take nothing by her claims and that her claims are dismissed with prejudice.

SIGNED this 27th day of January, 2020.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[11] Plaintiff's own expert states that cell phones accessing Gmail would not show what IP address was being used. Broderhausen Depo. at p. 50.